BRIAN R. CHAVEZ-OCHOA
CALIFORNIA STATE BAR #190289
CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

Attorneys for Plaintiffs

04 11008 WGY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

REV. PATRICK J. MAHONEY, CHRISTIAN ) Case No.: No.
DEFENSE COALITION, OPERATION )
RESCUE BOSTON, and OPERATION ) MEMORANDUM OF LAW IN SUPPORT
) OF PLAINTIFFS APPLICATION FOR
RESCUE WEST, ) TEMPORARY RESTRAINING ORDER
)
Plaintiffs, )
)
vs. )
)
CITY OF BOSTON and MAYOR THOMAS )
M. MENINO, in his Official Capacity as )
Mayor of the City of Boston, )
)
)
Defendants. )
)

### FACTS OF THE CASE

This is a civil action pursuant to 42 U.S.C. Section 1983 to vindicate the plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. The plaintiffs, an ordained Presbyterian Minister, Christian Defense Coalition, an unincorporated religious association, and Operation Rescue Boston, as well as Operation Rescue West, unincorporated Pro-Life Associations, seek injunctive and declaratory relief, as well as damages, to require the

MEMORANDUM OF LAW - 1

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

defendants to cease enforcement, and adherence thereto, of the "Guidelines for any Person or Group Wishing to Stage an Event the Week of July 24-August 1, 2004 (This permitting process of the defendants shall hereinafter be referred to as "guidelines)." This guideline is being utilized by the defendants in ascertaining whether or not to issue a permit(s) to individuals and groups who intend to conduct First Amendment activity during the Democratic National Convention being held in the City of Boston during the time noted above in the "guidelines".

The "guidelines" being proffered by the defendants in determination as to whether or not a permit(s) should issue represents a prior restraint against First Amendment speech and is therefore impermissible. The defendants have promulgated these at-issue "guidelines" specifically for the Democratic National Convention as noted in Exhibit #1, (hereby incorporated by reference and attached hereto) as indicated herewith:

"In order to implement an efficient process for the permitting of public events during the week of the Democratic National Convention, the City of Boston is instituting a permitting process for the above dates that is described below."

This permitting process provides for an indefinite period of time prior to either granting or denying the permit application, and provides for a number of city agencies to decide whether or not a permit should issue. The "guidelines" of the defendants' fails to take into account the unbridled or unfettered discretion of public officials' thereby according indiscriminate and arbitrary decision making as to the permits that will, or will not be, issued. Although the "guidelines" state that the application must be submitted at least 14 days before the proposed event, and that the applicant will be mailed a written response to their application within 7 days of receipt of a completed application, the "guidelines also provide that the period of time may extended by an additional 7 days, if necessary. The "guidelines" then dictate and order that the applicant will be directed to other appropriate agencies to obtain the required permits. Finally, after consulting with various agencies in an attempt to procure the permit(s), the applicant shall return to the Office of Consumer Affairs and Licensing for final approval of the event application.

MEMORANDUM OF LAW - 2

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

The permitting process is skewed in that it fails to provide any time limits within which the other relevant agencies shall act in approving the application. This leaves the applicant in limbo as to whether or not his/her event can be planned and furthermore, and more importantly, limits the appeal process and court intervention by the very process itself as to the waiting period dictated within the "guidelines". The applicant, and more specifically, these complaining plaintiffs', is required to jump through several hurdles and negotiate a path of confusion and bureaucracy that amounts to impermissible constitutional restrictions upon these plaintiffs First Amendment rights. Thus, the defendant's regulatory scheme allows indefinite postponement of the issuance of the permit(s). Taking into account that the event that surrounds this new permitting process is the Democratic National Convention, and considering that this event only takes place every four years, the defendants have ordered and established the possibility, by manner of their permitting scheme, that no one individual or group may be allowed to exercise their First Amendment rights during the Democratic National Convention based upon the limitless time the defendants have to approve permit applications.

## ARGUMENT

## PLAINTIFFS SATISFY THE STANDARD FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER

The standard for issuance of a temporary restraining order under Fed.R.Civ.P. 65 is well established. It will issue if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition," and (2) the applicants attorney certifies to the efforts made to serve notice on opposing counsel. Id. Plaintiffs satisfy both of these elements.

### A.    Plaintiffs will suffer Immediate and Irreparable Injury unless a TRO Issues.

The threat of immediate and irreparable harm to plaintiffs is clear. The plaintiffs are threatened with the prospect of having their constitutional rights abridged and infringed upon by

MEMORANDUM OF LAW - 3

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

the newly enacted permitting process put into place by the defendants for purposes of the Democratic National Convention. This chilling effect on the First Amendment rights of the plaintiffs in this case is undeniably acute. "The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); See also *New York Times Co. v. United States*, 403 U.S. 713 (1971).

    Here, the permitting scheme of the defendants allows for an indefinite postponement of the issuance of permits allowing First Amendment activities at and during the Democratic National Convention. The newly enacted permitting process of these defendants fails to define any time limitations (time within which a decision must be rendered) relevant to the agencies and departments that must be consulted, and prior to my permit applications receiving final approval from the defendants (refer to Exhibit #1, hereby incorporated by reference and attached hereto). The at-issue permitting scheme of the defendants is an impermissible prior restraint. (See <u>Shuttlesworth v. Birmingham</u>, 394 U.S. 147, 150-151 (1969); <u>Staub v. City of Baxley</u>, 355 U.S. 313, 322 (1958); <u>Kunz v. New York</u>, 340 U.S. 290, 293-294 (1951); <u>Schneider v. State</u>, 308 U.S. 147, 161-162 (1939); <u>Lovell v. Griffin</u>, 303 U.S. 444, 451-452 (1938). In these cases, the plaintiffs asked the courts to provide relief where public officials had forbidden the plaintiffs the use of public places to say what they wanted to say. The restraints took a variety of forms, with officials exercising control over different kinds of public places under the authority of particular statutes.

    All, however, had this in common: they gave public officials the power to deny use of a forum in advance of actual expression. Such is the case at bar. Invariably, the courts have felt obliged to condemn systems in which the exercise of such authority was not bounded by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. The court's distaste for censorship -- reflecting the natural distaste of a free people -- is deep-written in our law. In each of the cited cases above the prior restraint was embedded in the licensing system itself, operating without acceptable

MEMORANDUM OF LAW - 4

1  standards.  In *Shuttlesworth* the Court held unconstitutional a Birmingham ordinance which
2  conferred upon the city commission virtually absolute power to prohibit any "parade,"
3  "procession," or "demonstration" on streets or public ways.  It ruled that "a law subjecting the
4  exercise of First Amendment freedoms to the prior restraint of a license, without narrow,
5  objective, and definite standards to guide the licensing authority, is unconstitutional." 394 U.S.,
6  at 150-151.  In <u>Hague v. CIO, 307 U.S. 496 (1939),</u> a Jersey City ordinance that forbade public
7  assembly in the streets or parks without a permit from the local director of safety, who was
8  empowered to refuse the permit upon his opinion that he would thereby prevent "'riots,
9  disturbances or disorderly assemblage,'" was held void on its face. <u>Id., at 516</u> (opinion of
10 Roberts, J.).

11      "While "prior restraints are not unconstitutional *per se* . . . any system of prior restraint . .
12 comes to this Court bearing a heavy presumption against its constitutional validity."
13 <u>Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, at 558.</u> See, e. g., <u>Lovell v. Griffin, 303
14 U.S. 444, 451-452 (1938); Cantwell v. Connecticut, 310 U.S. 296, 306-307 (1940); Cox v. New
15 Hampshire, 312 U.S. 569, 574-575 (1941); Shuttlesworth v. Birmingham, 394 U.S. 147, at 150-
16 151.</u> Cases addressing prior restraints have identified two evils that will not be tolerated in such
17 schemes. First, a scheme that places "unbridled discretion in the hands of a government official
18 or agency constitutes a prior restraint and may result in censorship." <u>Lakewood v. Plain Dealer
19 Publishing Co., 486 U.S. 750, 757 (1988).</u> See <u>Saia v. New York, 334 U.S. 558 (1948); Niemotko
20 v. Maryland, 340 U.S. 268 (1951); Kunz v. New York, 340 U.S. 290 (1951); Staub v. City of
21 Baxley, 355 U.S. 313 (1958); Freedman v. Maryland, 380 U.S. 51 (1965); Cox v. Louisiana, 379
22 U.S. 536 (1965); Shuttlesworth v. Birmingham, supra; Secretary of State of Maryland v. Joseph
23 H. Munson Co., 467 U.S. 947 (1984).</u> "'It is settled by a long line of recent decisions of this
24 Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the
25 Constitution guarantees contingent upon the uncontrolled will of an official -- as by requiring a
26 permit or license which may be granted or withheld in the discretion of such official -- is an
27 unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.'"
28 <u>Shuttlesworth, supra, at 151</u> (quoting <u>Staub, supra, at 322).</u>

MEMORANDUM OF LAW - 5

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible. *Freedman, supra*, at 59; *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 (1980) (striking statute on ground that it restrained speech for an "indefinite duration"). In *Freedman,* the Court addressed a motion picture censorship system that failed to provide for adequate procedural safeguards to ensure against unlimited suppression of constitutionally protected speech. 380 U.S., at 57. Like a censorship system, a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure prompt issuance of the license. In *Riley v. National Federation of Blind of N. C., Inc.*, 487 U.S. 781 (1988), the Court held that a licensing scheme failing to provide for definite limitations on the time within which the licensor must issue the license was constitutionally unsound, because the "delay compelled the speaker's silence." *Id., at 802.* The failure to confine the time within which the licensor must make a decision "contains the same vice as a statute delegating excessive administrative discretion," *Freedman, supra,* at 56-57. Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech.

Furthermore, the instant matter can be distinguished from the case of *Thomas v. Chi. Park Dist.*, 534 U.S. 316 (U.S., 2002). That case involved the permitting process and the requirements to obtain a permit in and for use of the parks system in Chicago. There a person was required to obtain a permit in order to conduct a public assembly, parade, picnic, or other event involving more than 50 individuals, or engage in an activity such as creating or emitting any amplified sound. Chicago, Ill., Chicago Park Dist. Code ch. VII, §§ C.3.a(1), C.3.a(6). Applications for permits shall be processed in order of receipt, § C.5.a, and the Chicago Park District must decide whether to grant or deny an application within 14 days unless, by written notice to the applicant, it extends the period an additional 14 days, § C.5.c. Applications can be denied on any of 13 specified grounds. § C.5.e. If the Chicago Park District denies an application, it must clearly set forth in writing the grounds for denial and, where feasible, must

MEMORANDUM OF LAW - 6

propose measures to cure defects in the application. §§ C.5.d, C.5.e. When the basis for denial is prior receipt of a competing application for the same time and place, the Chicago Park District must suggest alternative times or places. § C.5.e. An unsuccessful applicant has seven days to file a written appeal to the General Superintendent of the Chicago Park District, who must act on the appeal within seven days. § C.6.a. If the General Superintendent of the Chicago Park District affirms a permit denial, the applicant may seek judicial review in state court by common-law certiorari.

The petitioners in Chicago Park Dist. contended that the criteria set forth in the ordinance was insufficiently precise because they are described as grounds on which the Park District "may" deny a permit, rather than grounds on which it *must* do so. Such is not the case at bar. The instant matter is being challenged because the permitting process allows for an indefinite time to grant or deny permit applications. Furthermore, there are no provisions in the defendants' newly enacted permitting process that addresses the need for alternative sites when a competing prior permit application has been received for a particular place and/or the requirement that the defendants' to suggest alternative times or places. The defendants' newly enacted permitting scheme fails to satisfy the requirements of time, place, and manner jurisprudence, under which the permit scheme "must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and **must leave open ample alternatives for communication.**" Forsyth County v. Nationalist Movement, 505 U.S. 123, 130, 120 L. Ed. 2d 101, 112 S. Ct. 2395 (1992); see also Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984).

The defendants' guidelines in this matter lack the procedural safeguards that were inherent in the Chicago Park Dist. case. Finally, and most importantly, the Chicago Park Dist. scheme did not provide for unfettered and/or unbridled discretion by their public officials as to acceptance or denial of a permit application and set firm a time that a decision as to the application, whether to grant or deny, would be made. Such is not the case here. The plaintiffs' contend that the permitting scheme of the defendants' fails to provide procedural safeguards and furthermore, the scheme is unconstitutional on its face and as applied for the reasons noted

MEMORANDUM OF LAW - 7

herein. As a further example of the defendants' permitting scheme and its application, the plaintiffs' direct the Court's attention to the following:

"A content-neutral time, place, and manner regulation can be applied in such a manner as to stifle free expression. It thus must contain adequate standards to guide an official's decision and render that decision subject to effective judicial review. See Niemotko v. Maryland, 340 U.S. 268, 271, 95 L. Ed. 267, 71 S. Ct. 325.

The permitting scheme of the defendants' fails to provide procedural safeguards as required under Niemotko v. Maryland, 340 U.S. 268, 271, 95 L. Ed. 267, 71 S. Ct. 325.

Although the newly enacted guidelines of the defendants provide that the Office of Consumer Affairs and Licensing will notify the applicant within seven (7) days of receipt of a completed application (and may be extended to fourteen (14) days, if necessary) as to the status, the permit process must then proceed to other agencies and departments for their approval. The permit will not issue if the application has not been approved by other agencies and departments. The guidelines are silent, however, as to what other agencies and departments must approve the application, but presumably, the health department, fire department, the police department and other unknown public officials must grant their approval as to the permit application as being in compliance with the applicable guideline. Moreover, the newly enacted permitting process does not set a time limit within which the approvals of these other agencies and departments must occur. The guidelines provide no means by which an applicant may ensure that the application for the permit will be approved within the 14-day time period within which the permit is purportedly to be issued if approved. Thus, the defendants' regulatory scheme allows indefinite postponement of the issuance of a permit and therefore is an impermissible prior restraint.

Finally, the instant matter can be distinguished from Chicago Park Dist in that the permitting scheme of the Chicago Parks Department was only utilized when fifty or more people were to be involved in activities conducted within the parks. Here, the defendants' permitting scheme springs into effect with the application of just one person. The Chicago permitting scheme had less of an impact on the right to association and assembly. The defendant's newly enacted permitting scheme impacts not only free speech rights, but also the right to assemble and

MEMORANDUM OF LAW - 8

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

associate. Plaintiffs ask a simple question as to whether or not two individuals could violate the permitting scheme in Boston by simply standing on a street corner and engaging in robust constitutionally protected free speech with passer-bys if no permit has been granted to them by the defendants'? Could one person be in violation? The answer to these questions, when applying the permitting process of these defendants to these facts, is an undeniable yes.

The chilling effect on plaintiffs' rights under the First Amendment is evidence enough to satisfy the irreparable harm requirement. So also is the chilling effect suffered by third parties not before the Court who would otherwise exercise their First Amendment rights but for the regulatory scheme of the defendants. Moreover, the proof of irreparable harm suffered by plaintiffs is clear and convincing. Plaintiffs' point once again the *Elrod v. Burns* and the language previously cited (also see *National People's Action v. Village of Willmette*, 914 F.2d 1008, 1013 (7th Cir. 1990) cert denied, 499 U.S. 921 (1991) (even temporary deprivation of first amendment rights generally sufficient to prove irreparable harm).

### 1.    Plaintiffs' Rights are Protected by the First Amendment

Plaintiffs intend only to peacefully exercise their right to religious speech and religious freedom in a public forum. There is not doubt that such "speech" is protected by the first amendment. *See, e.g. U.S. v. Grace*, 461 U.S. 171, 176 (1983); *Carey v. Brown*, 447 U.S. 455, 460 (1980); *Gregory v. City of Chicago*, 394 U.S. 111, 112 (1969). The deprivation or chill of plaintiffs' federally protected rights, even for minimal periods of time, constitutes irreparable harm. In the instant matter, the defendants' newly enacted permitting scheme prohibits more speech than is necessary. The conduct of the defendants is impermissible and therefore subject to sanction.

Informed public discourse and political debate is the foundation to American democracy. A grant of temporary relief will assure that plaintiffs will remain free to exercise their right of

MEMORANDUM OF LAW - 9

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

freedom of speech, association and assembly. No harm will come the result of a temporary restraining order issuing in this matter so as to determine the above set of facts.

### 2. The Plaintiffs have Standing to Bring this Action

As to whether or not plaintiffs have standing to bring this action, it is well settled law:

"To satisfy the case or controversy requirements of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact" that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be addressed by a favorable decision."

*Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161 (1997) (citation omitted). Here, standing is easily established. The plaintiffs intend to exercise their First Amendment rights to free speech, assembly and association at and during the Democratic National Convention. Plaintiff Mahoney has already submitted several applications for permits during the week of July 24 through August 1, 2004 (see the Declaration of Patrick J. Mahoney). In this type of case, plaintiffs have standing if they, generally speaking, demonstrate that they have suffered "injury in fact" that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be addressed by a favorable decision. The plaintiffs constitutional rights have been adversely impacted and violated by the defendants' newly enacted permitting scheme for reasons noted above. The plaintiffs' injury can and will be remedied by a favorable decision of this Court.

### B. Plaintiffs' Counsel has Provided Oral Notice of the Application for Temporary Restraining Order.

The second prong of the temporary restraining order analysis is a showing of counsel's efforts to serve notice of the application on opposing counsel. See Fed.R.Civ.P. 65(b). This

MEMORANDUM OF LAW - 10

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

element is easily satisfied here. On May 18, 2004 at 9:26 a.m. California time, I placed a telephone call to the Law Department of the City of Boston. The Law Department transferred me to City Hall and the operator at City Hall transferred me to the City Clerks Department. I informed Ms. Patricia Finnigan of the filing of this action and the request for a temporary restraining order, speaking with her personally, and informed her of plaintiffs' intention to file their Application for Temporary Restraining Order in this Court on Wednesday, May 19, 2004 at about 2:30 p.m.

## CONCLUSION

For the foregoing reasons, plaintiffs' Application for Temporary Restraining Order should be granted.

Dated: May 18, 2004.

Respectfully submitted,

CHAVEZ-OCHOA LAW OFFICES

Brian R. Chavez-Ochoa
California State Bar #190289
Lead Counsel for the Plaintiffs
4 Jean Street, Suite 4
Valley Springs, California 95252
(209) 772-3013
Fax (209) 772-3090

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090